**[Cite as *In re L.C.*, 2026-Ohio-2949.]**

IN THE OHIO COURT OF APPEALS
FIFTH APPELLATE DISTRICT
GUERNSEY COUNTY, OHIO

| IN THE MATTER OF: L.C. | Case No. 26CA000018 |
|---|---|
| | <u>Opinion And Judgment Entry</u> |
| | Appeal from the Guernsey County Common Pleas Court, Juvenile Division, Case No. 24JC00195 |
| | Judgment:   Affirmed |
| | Date of Judgment Entry: July 30, 2026 |

**BEFORE:** Craig R. Baldwin; Robert G. Montgomery; David M. Gormley, Judges

**APPEARANCES:** PATRICIA NORRIS, for Appellee; MICHAEL GROH, for Appellant.

*Montgomery, J.*

{¶1}    Appellant, B.C. (hereinafter "Mother"), appeals the judgment of the Guernsey County Common Pleas Court, Juvenile Division, awarding permanent custody of her child, L.C., to Appellee, Guernsey County Children's Services (hereinafter "the Agency").[1]

---

[1] The Agency has not filed a brief in the instant appeal.

## STATEMENT OF THE FACTS AND CASE

{¶2}  Mother had four children living in her home: D.W.[2], L.C., D.C., and M.C. D.C. and M.C. are twins.  D.W. ingested methamphetamine and had to be life-flighted to Nationwide Children's Hospital.  L.C., D.C. and M.C. were in the home at the time, and the Agency had been investigating reports of neglect of the children.

{¶3}  Mother was convicted of endangering children and tampering with evidence in connection with the incident involving D.W.  She was sentenced to thirty months in prison. The children were placed in the temporary custody of the Agency on May 22, 2024, following a finding of dependency.  The twins were placed in one foster home, and L.C. was placed in a separate foster home.

{¶4}  Mother had no contact with the children from the time of her incarceration on April 28, 2024, until February 10, 2026, when she began visiting with the children after being released to a halfway house.  Mother had seven visits with the children.

{¶5}  On October 10, 2025, the Agency filed a motion for permanent custody of the children.  The case proceeded to a hearing in the trial court.  Following the hearing, the trial court terminated Mother's parental rights pursuant to R.C. 2151.414(B)(1)(d) because the children had been in the custody of the Agency for a period of twelve or more months of a consecutive twenty-two-month period. The trial court found that permanent custody was in the best interest of the children pursuant to R.C. 2151.414(D) and granted permanent custody of the children to the Agency.

---

[2] D.W. was placed in the legal custody of his father and is no longer a part of the case underlying the instant appeal.

{¶6}    It is from the April 1, 2026, judgment of the trial court Mother prosecutes her appeal, assigning as error:

{¶7}    "I. THE TRIAL COURT'S FINDING THAT PERMANENT CUSTODY WAS IN THE MINOR CHILDREN'S BEST INTERESTS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶8}    Mother argues the trial court's finding that permanent custody was in the best interest of the children is against the manifest weight of the evidence.  We disagree.

## APPLICABLE LAW AND STANDARD OF REVIEW

{¶9}    In order to grant permanent custody to the Agency, the juvenile court must determine, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody to the agency pursuant to R.C. 2151.414(D). R.C. 2151.414(B)(1).

{¶10}    In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D)(1) mandates that the trial court must consider all relevant factors, including, but not limited to, the following: (a) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (b) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (c) the custodial history of the child; (d) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody; and (e) whether any of the factors in division (E)(7) to (11) of R.C. 2151.414 apply in relation to the parents and child.

{¶11}    Because R.C. 2151.414 requires a juvenile court to find by clear and convincing evidence the statutory requirements are met, the sufficiency-of-the-evidence and/or manifest-weight-of-the-evidence standards of review are the proper appellate standards of review of a

juvenile court's permanent-custody determination, as appropriate depending on the nature of the arguments that are presented by the parties. *In re Z.C.*, 2023-Ohio-4703, ¶ 11. "'Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Id*. at ¶ 7, *quoting Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

## ANALYSIS

{¶12}  The trial court reviewed all the applicable best interest factors set forth in R.C. 2151.414(D).  The trial court noted that when Mother was first incarcerated, M.C. and D.C. were just six weeks old and L.C. was just over one year old.  D.C. and M.C. were placed together in one foster home, and L.C. was placed in a separate foster home, and the children had been in the same foster homes since the beginning of the case.  The children were well-bonded with the foster parents.

{¶13}  L.C. has Down's Syndrome and has many medical needs.  She must receive thickened liquids so she does not aspirate.  She has some hearing loss and receives speech and occupational therapy.  She will need physical therapy when she grows a bit more.  Her adenoids have been removed and there is a medical recommendation that her tonsils be removed.  She has no fear of danger and when awake, she must receive 100% of the foster parent's attention.

{¶14}  Mother argues she would be released from the halfway house in June of 2026 and would be available to establish more of a relationship with the children.  She argues she was complying with her case plan and completing programs at the halfway house.  She also

argues the trial court failed to consider the effect severing the family relationship would have on the children.

{¶15} The trial court noted that the children were very young and had spent the majority of their lives in foster care. They only had seven visits with Mother. With regards to the progress Mother had displayed in the halfway house, the trial court specifically found:

> The Agency cannot determine whether she has turned her life around and can maintain sobriety without constant supervision. Mother was released to the halfway house in December of 2025. She has had two major infractions and one minor infraction since arriving. She had employment at McDonalds but recently lost that job. While she has made efforts to improve her life there is not enough time in this case to successfully complete a case plan for the return of the children.

Judgment Entry, April 1, 2026, p. 8.

{¶16} The judgment of the trial court finding permanent custody to be in the best interest of the children is not against the manifest weight of the evidence.

{¶17} The assignment of error is overruled.

## CONCLUSION

{¶18} The judgment of the Guernsey County Common Pleas Court, Juvenile Division, is affirmed.

{¶19} Costs are assessed to Appellant.

By: Montgomery, J.

Baldwin, P.J. and

Gormley, J. concur.